SMITH EIBELER, LLC
Robert W. Smith, Esq.
101 Crawfords Corner Road, Suite 1-105R
Holmdel, New Jersey 07733
Tel:  (732) 935-7246
Fax: (732) 444-1096

MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Tel:  (513) 651-3700
Fax:  (513) 665-0219
Attorneys for Plaintiff

In the United States District Court
For the District of New Jersey

| | |
|---|---|
| Daniel Kessler, | |
| *On behalf of themselves  and those similarly situated*, | Case No. |
| Plaintiffs, | Judge |
| v. | Magistrate Judge |
| Joarder Properties Limited Liability Company; Salim Joarder; John Doe Corp. 1-25; John Doe 1-25. | Jury Demand Endorsed Hereon |
| Defendants. | |

Class and Collective Action Complaint

1.     Plaintiff Daniel Kessler, on behalf of himself and all similarly-situated individuals, bring this action against Joarder Properties Limited Liability Company; Salim Joarder; John Doe Corp. 1-25; and John Doe 1-25 based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages as required by the

Fair Labor Standards Act ("FLSA"), New Jersey Minimum Wage Law ("NJMWL"), and N.J. Stat. Ann. 12:56-6.1 *et seq.*, the New Jersey Wage Payment Law ("NJWPL").

2.      Defendants operate pizza restaurants in Pennsylvania and New Jersey (the "Joarder Domino's").

3.      Plaintiff worked for Defendants as a pizza delivery driver at one of their New Jersey stores.

4.      Defendants repeatedly and willfully violated the Fair Labor Standards Act and New Jersey law by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

5.      All delivery drivers at the Defendants' stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

6.      Plaintiffs bring this action on behalf of themselves and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

7.      Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers in New Jersey, pursuant to Fed. R. Civ. P. 23, to remedy violations of New Jersey wage and hour law by Defendants.

## I.      Jurisdiction and Venue

8.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

9.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff Daniel Kessler's New Jersey state law claims.

10.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district and a substantial part of the events giving rise to the claim herein occurred in this district.

## II.    Parties

**Plaintiffs**

**Daniel Kessler**

11.      At all times relevant, Plaintiff Daniel Kessler resided in Tom's River, New Jersey.

12.      Plaintiff was an "employee" of all of the Defendants as defined in the FLSA.

13.      Plaintiff Joseph Martin has given written consent to join this action.

**Defendants**

14.      Upon information and belief, Salim Joarder operates the Joarder Domino's stores under the entity Joarder Properties Limited Liability Company and potentially other operating entities.

**Joarder Properties Limited Liability Company**

15.      Defendant Joarder Properties Limited Liability Company is a corporation with its principal place of business in East Haddonfield, New Jersey.

16.      Upon information and belief, Salim Joarder is and has been the owner and operator of Joarder Properties Limited Liability Company.

17.      Joarder Properties Limited Liability Company is the corporate entity that appears on Plaintiffs' paystubs for work completed for Defendants.

18.     Joarder Properties Limited Liability Company owns and operates Domino's restaurants in Pennsylvania and New Jersey.

19.     Joarder Properties Limited Liability Company operates out of its headquarters at 200 N. Haddon Ave., Haddonfield, NJ 08033.

20.     Joarder Properties Limited Liability Company has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

21.     Upon information and belief, Joarder Properties Limited Liability Company applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

22.     Joarder Properties Limited Liability Company has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

23.     At all relevant times, Joarder Properties Limited Liability Company maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

24.     Joarder Properties Limited Liability Company is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

25.     At all relevant times, Joarder Properties Limited Liability Company has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

26.     Joarder Properties Limited Liability Company's gross revenue exceeds $500,000 per year.

**John Doe Corp. 1-25**

27.     Upon information and belief, Defendants own and operate other entities and/or limited liability companies that also qualify as Plaintiff's "employer" under the FLSA and New Jersey law.

28.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Salim Joarder**

29.     Upon information and belief, Salim Joarder is the owner and operator of Joarder Properties Limited Liability Company and John Doe Corp. 1-25.

30.     Salim Joarder is individually liable to the Joarder Domino's delivery drivers under the definitions of "employer" set forth in the FLSA because he owns and operates the Joarder Domino's stores, serves as a manager of the Joarder Domino's stores, controls significant aspects of the Joarder Domino's stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

31.     At all relevant times, by virtue of his role as owner and operator of the Joarder Domino's stores, Salim Joarder has had financial control over the operations at each of the Joarder Domino's stores.

32.     At all relevant times, by virtue of his role as owner and operator of the Joarder Properties stores, Salim Joarder has a role in significant aspects of the Joarder Domino's stores' day to day operations.

33.     At all relevant times, by virtue of his role as owner and operator of the Joarder Properties stores, Salim Joarder has had control over the Joarder Domino's stores' pay policies.

34.     At all relevant times, by virtue of his role as owner and operator of the Joarder Domino's' stores, Salim Joarder has had power over personnel and payroll decisions at the Joarder Domino's stores, including, but not limited to, influence of delivery driver pay.

35.     At all relevant times, by virtue of his role as owner and operator of the Joarder Domino's stores, Salim Joarder has had the power to hire, fire and discipline employees, including delivery drivers at the Joarder Domino's stores.

36.     At all relevant times, by virtue of his role as owner and operator of the Joarder Domino's stores, Salim Joarder has had the power to stop any illegal pay practices that harmed delivery drivers at the Joarder Domino's stores.

37.     At all relevant times, by virtue of his role as owner and operator of the Joarder Domino's stores, Salim Joarder has had the power to transfer the assets and liabilities of the Joarder Domino's stores.

38.     At all relevant times, by virtue of his role as owner and operator of the Joarder Domino's stores, Salim Joarder has had the power to declare bankruptcy on behalf of the Joarder Domino's stores.

39.     At all relevant times, by virtue of his role as owner and operator of the Joarder Domino's stores, Salim Joarder has had the power to enter into contracts on behalf of each of the Joarder Domino's stores.

40.     At all relevant times, by virtue of his role as owner and operator of the Joarder Domino's stores, Salim Joarder has had the power to close, shut down, and/or sell each of the Joarder Domino's stores.

41.     At all relevant times, by virtue of his role as owner and operator of the Joarder Domino's stores, Salim Joarder had authority over the overall direction of each of the Joarder Domino's stores and was ultimately responsible for their operations.

42.     The Joarder Domino's stores function for Salim Joarder's profit.

43.     Salim Joarder has influence over how the Joarder Domino's stores can run more profitably and efficiently.

**John Doe Individuals 1-25**

44.     Upon information, there are other Defendants who own and operate the Joarder Domino's stores that also qualify as Plaintiff's "employer" under the FLSA.

45.     The identities of these additional individual Defendants should be revealed as discovery progresses and can be named at that time.

### III.   Facts

### Class-wide Factual Allegations

46.     During all relevant times, Joarder Properties Limited Liability Company have operated Domino's Pizza Stores.

47.     The primary function of the Defendants' stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

48.     Some or all of Defendants' stores employ delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

49.     Plaintiff and the similarly situated employees Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the Joarder Domino's stores.

50.     All delivery drivers employed at the Joarder Domino's stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

51.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Joarder Domino's stores doing non-tipped work such as building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

52.     Upon information and belief, Defendants did not provide Plaintiff and similarly situated drivers with notice of the tip credit rules as required by 29 U.S.C. § 203(m).

53.     Defendants failed to provide proper notice of the tip credit provisions of the FLSA because they failed to pay the wage rate they promised to pay.

54.     At all relevant times, Plaintiff and similarly situated persons have been paid an hourly wage rate at or close to minimum wage for the hours they worked for Defendants.

55.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

56.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

57.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, automobile financing, suffered automobile depreciation, and incur cell phone and data charges all for the primary benefit of Defendants.

58.     One or more of the Joarder Domino's stores do not reimburse delivery drivers for their actual expenses.

59.     In fact, none of the Joarder Domino's stores reimburse delivery drivers for their actual expenses.

60.     The Joarder Domino's stores did not track their delivery drivers' actual expenses.

61.     One or more of the Joarder Domino's stores do not reimburse delivery drivers at the IRS standard business mileage rate.

62.     In fact, none of the Joarder Domino's stores reimburse delivery drivers at the IRS standard business mileage rate.

63.     One or more of the Joarder Domino's stores do not reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

64.     In fact, none of the Joarder Domino's stores reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

65.     Delivery drivers at Joarder Domino's stores reimburse drivers at a reasonable approximation of the drivers' expenses.

66.     Plaintiff and similarly situated employees typically averaged between 5-10 miles per round trip delivery.

67.     For the majority of the relevant time period, delivery drivers at the Joarder Domino's stores were reimbursed a flat rate per delivery. For example, Plaintiff was reimbursed $.90 per delivery or $1 per delivery.

68.     In or about spring of 2018, the Joarder Domino's stores began reimbursing their delivery drivers on a per mile basis. Plaintiff received $.31 per delivery.

69.     Plaintiff and similarly situated employees typically averaged three to four deliveries per hour.

70.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.  2012: 55.5 cents/mile
    b.  2013: 56.5 cents/mile
    c.  2014: 56 cents/mile
    d.  2015: 57.5 cents/mile
    e.  2016: 54 cents/mile
    f.  2017: 53.5 cents/mile
    g.  2018: 54.5 cents/mile

71.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guarantee to them by the FLSA.

72.     At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Joarder Domino's stores.

73.      All of Defendants' delivery drivers had similar experiences to that of Plaintiff.

74.     Defendants' delivery drivers were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

75.     Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

76.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred

unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

77.    Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of the Joarder Domino's stores. Thus, although reimbursement amounts may differ somewhat by time or region, the amounts of under-reimbursements relative to automobile costs incurred are relatively consistent between time and region.

78.    Defendants have willfully failed to pay federal minimum wage to Plaintiff and similarly situated delivery drivers at the Joarder Domino's stores.

**Plaintiff's Individual Factual Allegations**

**Daniel Kessler**

79.    Plaintiff has worked at the Joarder Properties store in Toms River, New Jersey since 2015.

80.    Plaintiff is paid minimum wage as an hourly rate, and minimum wage minus a tip credit while he is out on the road completing deliveries.

81.    Plaintiff delivered pizza and other food items to Defendants' customers' homes and businesses.

82.    When he was not making deliveries, Plaintiff worked inside the restaurant, completing tasks such as checking out carryout customers, cutting pizza, folding pizza boxes, cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

83.    For the majority of the relevant times, Plaintiff received a flat reimbursement rate of $.90 to $1.00 per delivery.

84. In May 2018, Plaintiff's reimbursement rate was changed to approximately $.31 per mile.

85. Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

86. Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, auto financing, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

87. Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, financing, automobile insurance, suffered automobile depreciation, and incur cell phone and data charges all for the primary benefit of Defendants.

88. Defendants did not track the actual expenses of Plaintiff.

89. Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

90. During Plaintiff's employment, Defendants failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

91. Plaintiff regularly makes approximately 3-4 deliveries per hour during the hours he worked as a delivery driver.

92. Plaintiff regularly drove about 5-10 miles per delivery.

93. Thus, assuming an average round trip delivery of 7.5 miles per delivery and $1.00 flat reimbursement rate, Defendants' average reimbursement rate for Plaintiff was approximately $.13 per mile ($1.00 per delivery/7.5 average miles per delivery).

12

94. In 2016, for example, the IRS business mileage reimbursement has been $.54 per mile, which reasonably approximated the automobile expenses, incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Plaintiff's automobile expenses, every mile driven on the job decreased his net wages by approximately $.41 ($.54-$.13) per mile. Considering an estimated average of about 7.5 miles per delivery, Defendants under-reimbursed him about $3.08 per delivery ($.41 x 7.5 miles).

95. Thus, while making deliveries (assuming 3 deliveries per hour), Plaintiff consistently "kicked back" to Defendants approximately $9.22 per hour ($3.08 per delivery x 3 deliveries per hour).

96. Upon information and belief, Defendants did not provide Plaintiff with notice of the tip credit rules as required by 29 U.S.C. § 203(m).

97. Defendants failed to provide proper notice of the tip credit provisions of the FLSA because they failed to pay wage rate they promised to pay.

98. As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

**Collective Action Allegations**

99. Plaintiff brings the First and Second Counts on behalf of himself and all similarly situated current and former delivery drivers employed at Defendants' stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

100.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

101.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

102.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

103.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

104.    Defendants are aware or should have been aware that 29 U.S.C. § 203(m) requires them to provide delivery drivers with notice of the tip credit provision of the FLSA.

105.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

106.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

107.    The FLSA Collective members are readily identifiable and ascertainable.

108.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

109.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**Class Action Allegations Under New Jersey Law**

110.    Plaintiff brings the Third and Fourth Counts under the Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Joarder Domino's stores in the State of New Jersey from the date 6 years prior to the filing of the complaint in this matter to the date of final judgment.

111.    Excluded from the Rule 23 are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 class.

112.    The number and identity of the Rule 23 class members are ascertainable from Defendants' records.

113.    The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Rule 23 Class Member are determinable from Defendants' records.

114.    For the purposes of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

115.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

116.    The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

15

117.     There are more than 50 Rule 23 Class members.

118.     Plaintiff's claims are typical of those claims that could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief that would be sought by each Rule 23 Class member in separate actions.

119.     Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, and failing to reimburse for expenses.

120.     Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with N.J.S.A. §34:11-56a *et seq.* and N.J.S.A. § 34:11-4-2 *et seq*.

121.     Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

122.     Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

123.     By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intending to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

124.     Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

125.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

126.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs.  The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

127.     Upon information and belief, Defendants and other employers throughout the state violate the New Jersey Minimum Wage Law ("NJMWL"), N.J. Stat. Ann. 12:56-6.1 *et seq.*; and the New Jersey Wage Payment Law ("NJWPL"). Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

128.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

129.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a.   Whether Defendants paid Plaintiff and the New Jersey Rule 23 Class members at the proper minimum wage rate for all hours worked;

b.   Whether Plaintiff and the New Jersey Rule 23 Class drove their own cars for work;

c.   Whether Plaintiff and the New Jersey Rule 23 Class were reimbursed for their actual expenses, including automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties;

d.   Whether Plaintiff and the New Jersey Rule 23 Class were reimbursed at the IRS standard business mileage rate for miles they drove completing deliveries for Defendants.

e.   Whether Defendants paid Plaintiff and the New Jersey Rule 23 Class at the rate of pay they promised to pay them as described by NJPWL;

18

f.  Whether Defendants failed to pay Plaintiff and the New Jersey Rule 23 Class in a timely manner as described by NJPWL;

g.  Whether Defendants' policy of failing to pay Plaintiff and the New Jersey Rule 23 Class was instituted willfully or with reckless disregard of the law; and

h.  The nature and extent of class-wide injury and the measure of damages for those injuries.

130.   In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

**IV.    Causes of Action**

<u>**Count 1**</u>
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

131.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

132.   Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

133.   Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

134.   Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

135.   Upon information and belief, Defendants did not provide Plaintiff with notice of the tip credit rules as required by U.S.C. § 203(m).

136.     Defendants impermissibly took a tip credit from the wages of Plaintiff and the FLSA Collective.

137.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

138.     Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

139.     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Overtime Wages—Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

140.     Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

141.     Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

142.     Because Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiff and the FLSA collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

143.     By not paying Plaintiff and the FLSA collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

144.    As a result of Defendants' willful violations, Plaintiff and the FLSA collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorney's fees.

<u>**Count 3**</u>
**Failure to Pay Minimum Wages—New Jersey Minimum Wage Law, N.J.S.A. § 34:11-56a,**
***et seq.***
**(On Behalf of Plaintiff and the Rule 23 Class)**

145.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

146.    At all times relevant, Plaintiff and the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Rule 23 Class as defined by the NJMWL and supporting regulations.

147.    Defendants were required to pay Plaintiff and the Rule 23 Class minimum wage as required by N.J.S.A. § 34:11-56a *et seq*. and the supporting regulations.

148.    Defendants failed to pay Plaintiff and the Rule 23 Class the minimum hourly wages to which they were entitled under the NJMWL.

149.    Due to Defendants' violations of the NJMWL, Plaintiff and the Rule 23 Class are entitled to recover unpaid wages, liquidated damages, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest for the six years preceding the filing of this complaint.

<u>**Count 4**</u>
**Failure to Pay Overtime Wages—New Jersey Minimum Wage Law, N.J.S.A. § 34:11-56a,**
***et seq.***
**(On Behalf of Plaintiff and the Rule 23 Class)**

150.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

151.    At all times relevant, Plaintiff and the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Rule 23 Class as defined by the NJMWL and supporting regulations.

152.    Defendants were required to pay Plaintiff and the Rule 23 Class overtime wages as required by N.J.S.A. § 34:11-56a *et seq*. and the supporting regulations.

153.    Defendants failed to pay Plaintiff and the Rule 23 Class the overtime wages to which they were entitled under the NJMWL.

154.    Due to Defendants' violations of the NJMWL, Plaintiff and the Rule 23 Class are entitled to recover unpaid wages, liquidated damages, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest for the six years preceding the filing of this complaint.

## Count 5
### Failure to Make Timely Payments—New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.2
### (On Behalf of Plaintiff and the Rule 23 Class)

155.    Plaintiff restates and incorporates by reference all allegations in all preceding paragraphs.

156.    At all times relevant, Plaintiff and the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Rule 23 Class as defined by the NJWPL and supporting regulations.

157.    Defendants were required to pay Plaintiff and the Rule 23 Class all wages due to them at least twice per month during each calendar month as required by N.J.S.A. § 34:11-4.2.

158.    Defendants failed to pay Plaintiff and the New Jersey Rule 23 Class the wages they were due in a timely manner as required by the NJWPL.

159.    Defendants were prohibited from withholding or diverting the wages of Plaintiff and the Rule 23 Class to cover automobile expenses as required by N.J.S.A § 34:11-4.4.

160.    Due to Defendants' violations of the NJWPL, Plaintiff and the Rule 23 Class are entitled to recover unpaid wages, liquidated damages, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest for the six years preceding the filing of this complaint.

**WHEREFORE**, Plaintiff Daniel Kessler prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members;

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure under New Jersey state law;

D.    Designation of Plaintiff Daniel Kessler as a representative of the Rule 23 Class and counsel of record as Class Counsel;

E.    Declaratory judgment that the practices complained of herein are unlawful under NJMWL and NJWPL;

F.    An award of unpaid minimum wages, overtime wages, and unreimbursed expenses, and liquidated damages due under the NJMWL and NJWPL;

G.    An award of prejudgment and post-judgment interest;

H.    An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees; and

I.       Such other legal and equitable relief as the Court deems appropriate.

DATED: July 20, 2018

*/s/Robert W. Smith*
ROBERT W. SMITH, ESQ.
SMITH EIBELER, LLC
101 Crawfords Corner Road, Suite 1-105R
Holmdel, New Jersey 07733
Tel:  (732)-935-7246

Andrew Biller (pro hac vice application forthcoming)
Andrew Kimble (pro hac vice application forthcoming)
Philip Krzeski (pro hac vice application forthcoming)
Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
513-651-3700 (Phone)
513-665-0219 (Fax)
Email: *abiller@msdlegal.com*
Email: *akimble@msdlegal.com*
Email: *pkrzeski@msdlegal.com*
www.msdlegal.com

*Counsel for Plaintiffs  and the putative  class*

## JURY DEMAND

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

DATED: July 20, 2018

*/s/Robert W. Smith*
ROBERT W. SMITH, ESQ.
SMITH EIBELER, LLC
101 Crawfords Corner Road, Suite 1-105R
Holmdel, New Jersey 07733
Tel:  (732)-935-7246

24

## VERIFICATION PURSUANT TO LOCAL RULE 11.2

Plaintiff hereby certifies that the matter in controversy is the subject of, or at least related to, another action pending in the United States District Court for the Southern District of Ohio, *Clark v. Pizza Baker, Inc*., No. 2:18-cv-157-ALM-EPD. Plaintiff here is a plaintiff in that action, which asserts similar claims against Domino's Pizza, Inc., Domino's Pizza, LLC, Domino's Pizza Franchising, LLC, Pizza Baker, Inc., Precision Pizza LLC, Lisa Burkett, and Christopher Baker. Defendants here are not parties to the *Clark* matter.


DATED: July 20, 2018

*/s/Robert W. Smith*
ROBERT W. SMITH, ESQ.
SMITH EIBELER, LLC
101 Crawfords Corner Road, Suite 1-105R
Holmdel, New Jersey 07733
Tel:  (732)-935-7246